498 A.2d 1345

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Bruce THOMAS, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1985.

Filed Sept. 13, 1985.

12

Mitchell Kaufman, Assistant Public Defender, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant Deputy District Attorney, Pittsburgh, for Com., appellee.

16

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

Bruce Thomas was convicted by a jury of kidnapping. The jury found that on May 23, 1982, between 6:30 and 7:00 a.m., Thomas and another person placed Theresa Forlastro, who was partially wrapped in a quilt, into the trunk of Thomas' vehicle in Wilkinsburg, Allegheny County, and drove eighty miles to Cheat Lake, near Morgantown, West Virginia. Later that morning, Miss Forlastro's body was found in the lake by a fisherman. She had been bound, gagged and shot in the head. Thomas was charged in Pennsylvania with kidnapping.[1] A first trial ended in a mistrial because of a mid-trial illness of the trial judge. A second trial resulted in a conviction. Post-trial motions were dismissed, and Thomas was sentenced to serve a term of imprisonment for not less than ten nor more than twenty years. An appeal nunc pro tunc was subsequently allowed by the trial court. The proceedings are before this Court, therefore, on direct appeal. Appellant's numerous averments of error will be considered seriatim.

Kidnapping is defined as follows:

A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

(1) To hold for ransom or reward, or as a shield or hostage.

(2) To facilitate commission of any felony or flight thereafter.

(3) *To inflict bodily injury on or to terrorize the victim or another.*

(4) To interfere with the performance by public officials of any governmental or political function.

1. Thomas and his companion were charged with murder in West Virginia.

18 Pa.C.S. § 2901(a) (emphasis added). At least three persons witnessed the placement of a person in the trunk of Thomas' vehicle, but all were unable to identify the person who had been wrapped in the floral quilt. Approximately two hours later, Miss Forlastro's body was found in Cheat Lake, West Virginia, and the floral quilt was found near the water's edge. Fibers on the victim's blouse had the same characteristics as the mats in the trunk of appellant's car. Medical testimony was to the effect that the victim had been shot after she was in the water. This evidence, although partially circumstantial, was sufficient to permit a jury to find that appellant, as charged, had removed Miss Forlastro a substantial distance for the purpose of inflicting bodily injury upon her. The jury could reject appellant's alibi defense and find that he had been a participant in the kidnapping.

Appellant argues that he was twice placed in jeopardy because his first trial ended in a mistrial granted, he asserts, without manifest necessity therefor. The decision to declare a mistrial was within the sound discretion of the trial court and, absent a flagrant abuse of that discretion, the decision will not be reversed. See: *Commonwealth v. Hamm*, 325 Pa.Super. 401, 412, 473 A.2d 128, 133 (1984). See also: *Commonwealth v. Shirey*, 333 Pa.Super. 85, 137, 481 A.2d 1314, 1342 (1984). However, where an accused does not consent to or request the granting of a mistrial, retrial is permissible only if the granting of the mistrial was manifestly necessary. See: *Commonwealth v. Smith*, 324 Pa.Super. 156, 159, 471 A.2d 510, 512 (1984). Illness of the trial judge is generally conceded to be a matter of manifest necessity which warrants a mistrial. *Commonwealth v. Robson*, 461 Pa. 615, 622, 337 A.2d 573, 577, *cert. denied*, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975); *Commonwealth v. Clark*, 287 Pa.Super. 380, 388 n. 7, 430 A.2d 655, 659 n. 7 (1981); *Commonwealth v. Manley*, 252 Pa.Super. 77, 86, 380 A.2d 1290, 1294 (1977), *vacated on other grounds*, 491 Pa. 461, 421 A.2d 636 (1980). See generally: 21 Am.Jur.2d *Criminal Law* §§ 285, 296 (1981). The judge

to whom this case was reassigned after the trial judge became ill and who declared the mistrial ascertained the following facts: (1) trial had begun on February 14, 1983; (2) when counsel for the co-defendant had become ill three days later, the trial had been recessed until February 22nd; and (3) the originally assigned judge had become ill in the interim and was expected to be out at least until February 28th. The court concluded that even if the original judge could resume the trial on February 28th, eleven calendar days would have passed. Finding these facts to constitute manifest necessity, the court declared a mistrial.

■ We are persuaded that there was manifest necessity for declaring a mistrial. The judge's illness required hospital testing, and the full extent of his illness, which appeared serious at the time the mistrial was declared, was not known. We are not unmindful of the fact that mistrials should not be granted lightly. Still, in this case it seems clear that there was manifest necessity warranting a mistrial. See: Commonwealth v. Robson, supra, 461 Pa. at 622, 337 A.2d at 577 (trial judge ill for several weeks); Commonwealth v. Manley, supra, 252 Pa.Super. at 86, 380 A.2d at 1294 (trial judge ill for two weeks).

After the charge against appellant had been returned to court by the district justice, appellant filed a petition for writ of habeas corpus to test the sufficiency of the Commonwealth's evidence. He argues on appeal that the Commonwealth failed to make out a prima facie case. This issue, however, is moot. It was determined at trial that the evidence of the Commonwealth was sufficient to be submitted to the jury, and this Court has now determined that the evidence was sufficient to sustain a conviction. Therefore, any deficiency before the district justice or at the habeas corpus hearing was harmless. See: Commonwealth v. Hess, 489 Pa. 580, 590, 414 A.2d 1043, 1048 (1980).

■ Appellant argues next that the trial court committed error by consolidating for trial the charges against him and his co-defendant. He contends that inconsistencies in

their alibis created a possible impression that both alibis had been fabricated. We reject this argument. The decision whether to try co-defendants jointly or separately is a decision committed to the sound discretion of the trial judge, and his decision will not be disturbed on appeal absent a manifest abuse of discretion or a showing of substantial prejudice and clear injustice to the accused. See: *Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985); *Commonwealth v. Gordon*, 329 Pa.Super. 42, 477 A.2d 1342 (1984); *Commonwealth v. Gelormo*, 327 Pa.Super. 219, 475 A.2d 765 (1984); *Commonwealth v. Katsafanas*, 318 Pa.Super. 143, 464 A.2d 1270 (1983). A joint trial of co-defendants is "advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants." *Commonwealth v. Morales, supra,* 508 Pa. at ——, 494 A.2d at 372. Here, appellant and his co-defendant had been charged with a kidnapping arising from the same acts, and much of the same evidence was necessary to prove the guilt of each. A joint trial, therefore, was not only permissible but also advisable. See: *Commonwealth v. Hamm, supra,* 325 Pa.Super. at 410, 473 A.2d at 132 (1984) and cases cited therein. Separate trials would have required a duplication of the same evidence. Moreover, there is no basis for finding that appellant was prejudiced in any way by being tried jointly with his co-defendant. The issues were uncomplicated and readily understandable by a jury. Appellant's assertion that he was prejudiced because he and the co-defendant presented different alibis is unwarranted. Although they may have served inconsistent interests, they were not so antagonistic that the defendants had to be tried by separate juries.

Appellant also contends that the trial court erred when it denied a pre-trial motion for change of venue. The grant or refusal of a motion to change venue is also a matter within the sound discretion of the trial court. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985); *Commonwealth v. Hamm, supra.* Unless publicity has

been sustained, pervasive, inflammatory and inculpatory, prejudice will not be presumed; actual prejudice must be shown. *Commonwealth v. Pursell, supra,* 508 Pa. at ——, 495 A.2d at 187; *Commonwealth v. Casper,* 481 Pa. 143, 151–153, 392 A.2d 287, 291–292 (1978); *Commonwealth v. Keeler,* 302 Pa.Super. 324, 328–330, 448 A.2d 1064, 1065–1066 (1982). In the instant case, pre-trial publicity did not cause prejudice. It did not impede in the slightest the selection and empanelling of an impartial jury. The trial court did not abuse its discretion by denying appellant's request for change of venue.

 Appellant was represented at trial by two attorneys. The trial court directed that only one attorney would be permitted to interrogate witnesses. Appellant argues that this directive deprived him of full representation by his retained counsel. The general conduct of a trial is committed to the broad discretion of the trial judge. *Commonwealth v. Bachert,* 271 Pa.Super. 72, 81, 412 A.2d 580, 585 (1979), *modified on other grounds,* 499 Pa. 398, 453 A.2d 931 (1982). Therefore, the court could reasonably limit counsel's participation in the trial. Because the limitation was reasonably related to the need to assure an orderly and impartial trial—the trial court noted that his prior courtroom experience with the two attorneys required such an order—the limitation did not constitute an abuse of discretion. Moreover, as the trial court pointed out, appellant in fact received the benefit of advice from both counsel in that they conferred with appellant and each other throughout the trial.

 Appellant moved pre-trial to suppress a post-arrest statement in which he said: "I love her. I love her. If I could bring her back I would." Assuming, without deciding, that this statement was inculpatory, the evidence nevertheless supports the suppression court's finding that it was made after appellant had been advised of his *Miranda* rights, after he had been offered food and drink, and while he was lucid and under no duress. In making this determination, we have considered only the evidence of the prosecu-

tion's witnesses and so much of the evidence for the defendant as, fairly read in the context of the record as a whole, remained uncontradicted. *Commonwealth v. Woodson*, 342 Pa.Super. 392, 394, 493 A.2d 78, 79 (1985), quoting *Commonwealth v. Hunt*, 280 Pa.Super. 205, 207–208, 421 A.2d 684, 685 (1980). The trial court rejected, as we must, the contradicted testimony of appellant that the statement was involuntary because he was cold, unfed, and shackled.

In post-trial motions appellant averred generally that the Commonwealth had "intentionally failed to provide complete discovery to the defense in advance of and during trial...." This argument was rejected by the trial court because it was "general in nature and totally unsupported by the record. The motion does not provide so much of a hint concerning what discovery materials the Commonwealth failed to provide...." Trial court op. at 28. We agree with the trial court. Appellant's post-trial motion was inadequate to preserve for appellate review the allegation now made that the Commonwealth failed to disclose statements by or whereabouts of the co-defendant's girlfriend. Only issues specifically raised in written post-trial motions are preserved for appellate review. *Commonwealth v. Goldblum*, 498 Pa. 455, 467, 447 A.2d 234, 240–241 (1982); *Commonwealth v. Austin*, 484 Pa. 56, 58–59, 398 A.2d 941, 942 (1979); *Commonwealth v. Knox*, 290 Pa.Super. 104, 107–108 n. 2, 434 A.2d 151, 152–153 n. 2 (1981).

Similarly, we will not review the propriety of questions asked by the District Attorney during redirect examination of its medical examiner where, as here, appellant made no objection to such questions. See: *Commonwealth v. Ryan*, 475 Pa. 559, 381 A.2d 138 (1977); *Commonwealth v. Harley*, 275 Pa.Super. 407, 418 A.2d 1354 (1980); *Commonwealth v. Jefferson*, 271 Pa.Super. 199, 412 A.2d 882 (1979).

Proper security measures are within the discretion of the trial court. *Commonwealth v. Gross*, 307

Pa.Super. 353, 356, 453 A.2d 620, 622 (1982). Accord: Commonwealth v. Patterson, 452 Pa. 457, 464, 308 A.2d 90, 94 (1975). The presence in the courtroom of uniformed sheriff's deputies, where their presence was quiet, unobtrusive and inconspicuous, did not abridge appellant's right to appear free of restraint or brand him a dangerous criminal. The trial court did not abuse its discretion by allowing uniformed deputies in the courtroom during appellant's trial.

 Whether to grant a request for a view is a matter within the discretion of the trial court. Commonwealth v. Mangini, 478 Pa. 147, 386 A.2d 482 (1978); Commonwealth v. Jones, 319 Pa.Super. 570, 466 · A.2d 691 (1983). See also: Pa.R.Crim.P. 1112. The trial court in this case refused a defense request to transport the jury into West Virginia to view Cheat Lake. This was not an abuse of discretion. An examination of the lake was not essential to a jury's comprehension of the kidnapping which allegedly had occurred in Pennsylvania or to an understanding of the evidence submitted by the parties. The distance of the lake from the place where the victim had been abducted could readily be established by oral testimony or other means, and the scene where the body was recovered could be demonstrated by photographic evidence. The lake, indeed, had minimum significance, and a physical view thereof was not essential.

 Appellant also complains because he was not permitted to show that the victim had been employed as a prostitute. We agree with the trial court that this evidence was irrelevant. Appellant's stated purpose of showing that prostitutes are frequently subjected to violence and that violence by an unknown person might have brought on Miss Forlastro's demise was speculative and properly rejected by the trial court.

 The trial court was also correct when it refused to allow the defense to attack the credibility of Commonwealth witnesses by showing histories of prostitution.

Only convictions of felonies and misdemeanors crimen falsi can be used to attack the credibility of witnesses. See: *Commonwealth v. Penn,* 497 Pa. 232, 439 A.2d 1154, *cert. denied,* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982); *Commonwealth v. Gray,* 329 Pa.Super. 347, 478 A.2d 822 (1984).

Appellant's final arguments are specious. The record does not disclose any reason for the court sua sponte to interrogate the members of the jury daily to determine whether they had obtained extra-judicial information about appellant or the criminal charge against him. Similarly, appellant's contention that the trial court refused to enforce a defense subpoena is unwarranted and unsupported.

The judgment of sentence is affirmed.